UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No.: _____

MARIA STOCKING,

     *Plaintiff,*

v.

NEWMARK KNIGHT FRANK VALUATION
& ADVISORY, LLC, a foreign limited liability
company,

     *Defendant.*

_____/

## <u>**DEFENDANT'S NOTICE OF REMOVAL**</u>

Defendant, Newmark Knight Frank Valuation & Advisory, LLC, by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 1331, 1441, 1446 and Local Rule 3.1, hereby removes this action, which is styled *Maria Stocking v. Newmark Knight Frank Valuation & Advisor, LLC*, and designated Case No.: 2021-025766-CA-01, from the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, in which the action is now pending, to the United States District Court for the Southern District of Florida, Miami Division. In support of this removal, Defendant states:

1.     A defendant who wants to remove a case from state court to federal court must file a notice of removal containing a short and plain statement of the grounds for removal. 28 U.S.C.S. § 1446(a). *Boone v. JP Morgan Chase Bank*, 447 F. App'x 961, 962 (11th Cir. 2011).

CASE NO.:

2.      This case is properly removable due to the existence of Federal Question Jurisdiction triggered by claims brought by the Plaintiff.

3.      This Notice of Removal is being timely filed within thirty (30) days from January 3, 2022, the date upon which the operative Complaint was served upon Defendant. Defendant has filed no responsive pleading to the Complaint in the State Court action.

4.      Defendant provided written notice to Plaintiff's counsel and will promptly file with the Clerk of the Circuit Court for the 11th Judicial Circuit, in and for Miami-Dade County, Florida, a Notice to State Court Clerk of Removal of Case to Federal Court pursuant to 28 U.S.C. § 1446(d).

5.      The District Court of the United States has original jurisdiction of this civil action as provided in 28 U.S.C. § 1331, as it is an action arising under the Constitution of the United States.

6.      A defendant may properly remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction" pursuant to the provisions of 28 U.S.C. § 1441.

7.      Per Plaintiff's Complaint, Plaintiff is bringing cause of actions under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., under 29 U.S.C. §§ 621-634 the Age Discrimination in Employment Act ("ADEA"), under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA") the Americans with Disabilities Act Amendments Act (ADAAA) 42 U.S.C. §12101 *et seq.,* the Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq*. ("EPA"); under 42 U.S.C. §1981 ("1981") for race based discrimination and  Florida Civil Rights Act of 1992, Florida Statutes, Chapter 760, *et seq*. ("FCRA"). *See Compl. at ¶ 1*

8.      Despite the fact that the Plaintiff has asserted certain claims under Florida state law, the Court should exercise its discretion to entertain pendent jurisdiction over the state law claims.

2

CASE NO.:

9.     For a federal court to retain jurisdiction of state law claims under pendent jurisdiction doctrine, the federal claim must have substance sufficient to confer subject matter jurisdiction on the court, (which is clear on the face of the instant Complaint). Moreover, the state and federal claims must derive from a common nucleus of operative fact (which is the case here). Furthermore, the cause of actions are alleged in a manner in which Plaintiff would ordinarily be expected to try them all in one judicial proceeding. *See U.S.C.A.Const. art. 3, § 2; United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966).

10.     Accompanying this Notice of Removal is a Civil Cover Sheet as well as the required filing fee.

WHEREFORE, for the above-stated reasons, Defendant respectfully request that this Honorable Court assume jurisdiction over this matter and approve this Notice of Removal.

Respectfully submitted, this 20th day of January, 2022.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th day of January, 2022, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the Court via CM/ECF, which will send notice of electronic filing to all counsel of record.

[Intentionally left blank]

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

CASE NO.:

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant NEWMARK KNIGHT FRANK*
*VALUATION & ADVISORY, LLC, a foreign limited*
*liability company*
Cole, Scott & Kissane Building
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33256
Telephone (786) 268-6415
Facsimile (305) 373-2294
Primary e-mail: cody.german@csklegal.com
Secondary e-mail: andrew.simon@csklegal.com

By:   s/ Andrew G. Simon
CODY GERMAN
Florida Bar No.:  58654
ANDREW G. SIMON
Florida Bar No.:  1002623



# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Richard Maletsky<br>Newmark Grubb Knight Frank<br>500 West Monroe Street<br>32ND Fl<br>Chicago, IL 60661-3777 |
| **Electronic copy provided to:** | Treasa Chennikara<br>Nirav Shah<br>Allison Kelley<br>David Paul<br>SOP Management<br>Janet Bergman (Cantor Fitzgerald) |

| | |
|---|---|
| **Entity:** | Newmark Knight Frank Valuation & Advisory, LLC<br>Entity ID Number  3698527 |
| **Entity Served:** | Newmark Knight Frank Valuation & Advisory, LLC |
| **Title of Action:** | Maria Stocking vs. Newmark Knight Frank Valuation & Advisory, LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Miami-Dade County Circuit Court, FL |
| **Case/Reference No:** | 2021-025766-CA-01 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 01/03/2022 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Remer & Georges-Pierre, PLLC<br>305-416-5000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Filing # 139554016 E-Filed 12/02/2021 11:15:03 AM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI
DADE COUNTY, FLORIDA.

CASE NO. 2021-025766-CA-01

MARIA STOCKING,

    Plaintiff,

vs.

NEWMARK KNIGHT FRANK
VALUATION & ADVISORY, LLC,
a foreign limited liability company,

    Defendant.

_____/

CERTIFIED PROCESS SERVER # 067
SECOND JUDICIAL CIRCUIT COURT OF FLORIDA
DATE SERVED 1·3·22   TIME 11:00 A



## SUMMONS IN A CIVIL CASE

**TO: NEWMARK KNIGHT FRANK VALUATION & ADVISORY, LLC**, through its
Registered Agent:

        CORPORATION SERVICE COMPANY
        1201 HAYS STREET
        TALLAHASSEE, FL 32301-2525

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY

        PETER HOOGERWOERD, ESQ.
        REMER & GEORGES-PIERRE, PLLC.
        44 WEST FLAGLER STREET
        SUITE 2200
        MIAMI, FL 33130

an answer to the complaint which is herewith served upon you, within **20 days** after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will
be taken against you for the relief demanded in the complaint.  You must also file your answer
with the Clerk of this Court within a reasonable period of time after service.

12/7/2021

CLERK    /36565

(BY) DEPUTY CLERK

DATE

2021-025766-CA-01

Filing # 139121881 E-Filed 11/23/2021 11:30:55 PM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

MARIA STOCKING,

     Plaintiff,

v.

CASE NO.:

NEWMARK KNIGHT FRANK
VALUATION & ADVISORY, LLC,
a foreign limited liability company,

     Defendant.

_____/

## COMPLAINT
### Opt-in Pursuant to §216b

Plaintiff, MARIA STOCKING ("Plaintiff"), by and through the undersigned counsel, and

on behalf of similarly situated members of this putative collective action, hereby sues Defendant,

NEWMARK KNIGHT FRANK VALUATION & ADVISORY, LLC (hereinafter "Defendant" or

"Newmark") and in support avers as follows:

### GENERAL ALLEGATIONS

1.  This is an action by the Plaintiff for damages exceeding $50,000,000 excluding attorney's

fees or costs for discriminatory treatment and retaliation under the Florida Civil Rights Act of

1992, Florida Statutes, Chapter 760, *et seq*. ("FCRA"), under Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e *et seq*., under 29 U.S.C. §§ 621-634 the Age Discrimination

in Employment Act ("ADEA"), and under the Americans with Disabilities Act, 42 U.S.C. § 12101,

*et seq*. ("ADA") the Americans with Disabilities Act Amendments Act (ADAAA) 42 U.S.C.

§12101 *et seq.*, the Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq*. ("EPA"); for Defendant's

unlawful discrimination and retaliation predicated on Plaintiff's sex (gender) and 42 U.S.C. §1981

("1981") for race-based discrimination.

2. This Court has jurisdiction over Plaintiff's claims.

3. Plaintiff was at all times relevant to this action and continues to be a resident of Miami-Dade County, Florida, within the jurisdiction of this Honorable Court. Plaintiff is a covered employee for purposes of the laws referenced herein.

4. Plaintiff is employed by Defendant. Defendant has a place of business in Miami-Dade County, Florida, where Plaintiff worked for Defendant.

5. Venue is proper in Miami Dade County, Florida, because all of the actions that form the basis of this Complaint occurred within Miami Dade County, Florida, and payment for Plaintiff's services was due from Defendant in Miami-Dade County, Florida.

6. Defendant a "person" and "employer" under Title VII, Florida Civil Rights Act of 1992, Fla. Stat. Section 760.01, *et seq.* because it employs fifteen (15) or more employees for the applicable statutory period, and it is subject to the employment discrimination provisions of the applicable statutes, Title VII, the FCRA and 1981.

7. Defendant has more than twenty (20) employees for purposes of the ADEA.

8. At all times material hereto, Plaintiff was an "employee" within the meaning of Title VII, Florida Civil Rights Act of 1992, Fla Stat. Section 760, *et seq.,* is subject to the employment discrimination provisions of the applicable statutes.

9. Plaintiff is a Hispanic female individual of Cuban descent and is a member of a class of persons protected from discrimination in her employment under Title VII and the Florida Civil Rights Act of 1992 (FCRA), Florida Statutes Section 760.

10. Plaintiff previously filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission, the agency responsible for investigating claims of employment discrimination. This charge was dually filed with the Florida Commission on Human Relations.

11. Declaratory, injunctive, legal, and equitable relief is sought under the laws set forth above together with attorney's fees, costs, and damages.

12. All conditions precedent for the filing of this action before this Court have previously been met, including the exhaustion of all pertinent administrative procedures and remedies.

13. This Court has jurisdiction over Plaintiff's EPA claims pursuant to 29 U.S.C. §206 *et seq.*

14. Counts for EPA violations may be brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA similarly situated plaintiffs whom opt-in to this action because the claims of the Plaintiff are similar to the claims of the EPA opt-in collective plaintiffs.

15. Plaintiffs and the EPA opt-in collective (a) are similarly situated in that (b) they were subjected to Defendant's common practice of sex-based (gender) discrimination in failing to compensate female employees like Plaintiff on par with their male counterparts.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

16. Plaintiff began her commercial real estate career in 1988. Defendant employed plaintiff as a Director/Vice President from on or about 2013. In April 2020, Plaintiff went on medical leave due to illness caused by the prolonged discrimination, disrespect, and humiliation she endured at Newmark. During medical leave, Plaintiff also experienced discrimination and retaliation. Within the last year, two similarly situated Hispanic female employees over the age of fifty (50), Antonia Donoso and Vivian Toro, worked at the same South Florida office and reported to the same management/directors as the Plaintiff. Both Ms. Donoso and Ms. Toro were terminated after complaining multiple times about discriminatory practices. Both similarly situated employees filed charges with the EEOC.

17. Plaintiff was being groomed for termination as she was subjected to the same discriminatory, disrespectful and humiliating treatment received by Ms. Donoso and Ms. Toro.

18. Plaintiff is an individual over forty years old (40) and, thus, falls within the class of individuals protected by the FCRA and ADEA.

19. Plaintiff's job duties included procuring her clients, managing staff, reviewing reports, and doing her own commercial Real Estate Appraisals.

20. During Plaintiff's employment, management used various harassment, bullying, and intimidation tactics to terminate her employment or force her to resign.

21. Plaintiff began her employment with Newmark in 2013, being hired as a Real Estate Appraiser. Sometime in 2014, Plaintiff was summoned to Newmark's Manhattan headquarters. Plaintiff was told that her boss was being fired. Plaintiff was offered a position as the new leader of the Miami office. While Plaintiff was elated and grateful for the opportunity, she was paid on a "commissions only" basis, while the younger, white American male "Managing Directors" were a paid greater salary, commissions, and bonuses.

22. While Newmark was happy to engage Plaintiff in employment, her younger similar to her white, male colleagues' responsibilities, Newmark refused to give her equal compensation and it declined to provide her with the title to accompany to afford her recognition of her responsibility to Newmark and only offered her the mere lesser title of "Director."

23. Nevertheless, Plaintiff was grateful for the opportunity. Furthermore, Plaintiff often outperformed her younger, white male colleagues.

24. In August 2017, John Busi left Cushman and Wakefield to expand the Newmark Valuation and Advisory ("V&A") division in an effort which has been ascribed in the industry as the "Newmark Siege." What ensued after was the aggressive poaching of V&A executives and

employees from the top, including the white, male-dominated firms like CBRE, Colliers, Integra, Cushman Wakefield, et cetera. Multiple millions of dollars were paid in bonuses to retain those younger, White male employees which Newmark sought to hire.

25. Amid this epic "Newmark Siege," Newmark also sought to internally consume tenured employees (such as Plaintiff and similarly situated female employees) and ruthlessly cannibalized Plaintiff, her years of work, her contacts in the industry and the very data she relied upon to conduct Newmark's business only to destroy her devoted career of service to Newmark in a manner that was blatantly discriminatory, disrespectful, abusive and humiliating.

26. Before the "Newmark Siege" and its misogynistic leadership took over, Plaintiff had successfully led the Miami office for some years. Plaintiff often outperformed her younger male, white counterparts. The Plaintiff's Miami office was in the top three of the national V&A platform. The "Newmark Siege" leadership assured the Plaintiff she would continue as the Miami leader.

27. However, just a short time later, Newmark announced that Plaintiff would be replaced with a younger, less-qualified white male with at least fifteen (15) years less experience than Plaintiff.

28. For example, one younger, white male was offered a substantial pay raise and a six-figure retention bonus. Plaintiff was neither provided a pay raise nor a retention bonus in her entire career with Newmark.

29. Comparator male employees with the same or similar job duties were less qualified white younger males in the "Newmark Siege Club." These male employees were offered pay raises and six and seven-figure bonuses whereas Plaintiff was offered nothing despite her numerous years of service to Newmark.

30. Exemplary of Newmark's new management, when "Newmark Siege" management arrived in South Florida, a physical and verbal altercation occurred between a white American male boss

and a Hispanic male appraiser. The term "Big Fat Pussy" was spewed by the white American male in the office as if the confrontation were a bar fight. This incident was reported to upper management. However, upper management stated that "they" would handle it instead of HR handling it.   Months later, Plaintiff's similarly situated female comparator, Antonia Donoso complained to the same upper management about the discrimination she was enduring, the same upper management told her not to report it to the Human Resources department; that they "would handle" the discrimination complaint.   In actuality, upper management never "handled" the discrimination complaints, and Antonia was fired after complaining to management.

31. This glaringly illustrates convincing mosaic of discrimination following the "Newmark Siege" where white male and where bad behavior was condoned and covered up.

32. When Plaintiff's manager was fired in 2014, he took all the clients and sarcastically wished Plaintiff the best of luck in leading the Miami office and in procuring clients.

33. Plaintiff started her new role "from zero" and spent years building a stellar reputation, a solid book of business with impressive repeat clients.

34. When the "Newmark Siege" embarked on implementing changes, Plaintiff and similarly situated female employees and specifically Hispanic employees over the age of forty suffered. Plaintiff's book of business was stolen and given to her younger white American male counterparts.

35. Defendant through its agents, officers and employees, contacted Plaintiff's clients behind her back and slandered her, asking these established clients of Plaintiff to remove her from the "approved appraiser" list.

36. Furthermore, Plaintiff was not aware this was going on, which made her appear inept when she asked her clients why they were no longer doing business with her.

37. This "client siege" uniquely happened to the Plaintiff, a 50-year-old Hispanic female and her similarly situated female comparators. This "client siege" did not occur with any of her younger white American male counterparts and non-similar comparators.

38. Worse, the Plaintiff's stolen clients were assigned to other younger, less qualified white American males.

39. This disrespectful and humiliating "client siege," along with the public demotion, irreparably damaged the reputation and career of Plaintiff. Plaintiff did complain and question many times why this was happening.

40. Plaintiff was callously dismissed and told that it was "policy." Evidently, this "policy" only applied to senior female employees like Plaintiff.

41. Plaintiff suffered glaringly unequal treatment and a palpable erosion of her hard work coming to an abrupt demise due to Defendant's illegal and discriminatory practices.

42. Due to Newmark's illegal and discriminatory practices, the career Plaintiff painstakingly built arrived at a vacuous halt and caused Plaintiff to experience a slow, yet severe, decline in her physical and mental health.

43. Towards the latter part of her tenure, Defendant's supervisors and managers unnecessarily scrutinized Plaintiff's in a calculated effort to suddenly make Plaintiff to "look stupid." This occurred all the while the work of the newly bred but less-qualified younger white American males was not scrutinized as they were being deemed as Newmark's "young rock stars." As such, they were given preferential treatment in all aspects of work.

44. After an impeccable twenty (20) year career, the Defendant suddenly claimed that the Plaintiff's work was "not up to standards."

45. Plaintiff was excessively made to re-evaluate her work.

46. Then, the reviewer who was required to sign Plaintiff's appraisals in order for her to receive her commissions (her only form of compensation) stated that he would no longer sign Plaintiff's appraisals because of "poor standards."

47. The Defendant's allegations of Plaintiff's "poor standards" is merely pretext of unlawful discrimination. To wit, the same reviewer had zero issues with signing the same work of less qualified, white, young American male "rock stars" with twenty (20) years less experience than the Plaintiff.

48. Plaintiff's similarly situated comparators received similar treatment. Before Antonia Donoso, an older Hispanic female, was terminated, the same reviewer excessively scrutinized her work said he would no longer sign her appraisals because of "poor standards."

49. Also, Vivian Toro, an older Hispanic female, was also terminated when she was suddenly accused of questionable behavior, after twenty (20) plus years of an impeccable career. All three Hispanic women over the age of fifty (50) , working at the same office under the supervision of the same management are suddenly stupid, incompetent and ousted from Newmark.

50. This irrational misogynistic, racist and ageist behavior clearly illustrates a convincing mosaic of a pattern and practice of blatant age, gender and race discrimination against Plaintiff and those similarly situated female employees who may desire to join this cause of action.

51. In addition, female employees in Plaintiff's position were not paid in parity with male employees who performed the same work as Plaintiff.

52. Male employees who performed the same work as Plaintiff were paid salaries, commissions and bonuses whereas Plaintiff was only paid a fifty percent (50%) commission on any work that she generated for the company.

53. The Defendant's prior management team paid male employees Greg Kendall and Bill Hemmingway salaries, bonuses and commissions, for performing the same work.  When the Defendant's new management team was put in place, nothing changed to alter the structure of Plaintiff's pay structure to bring her in parity with her male comparators.

54. The Plaintiff was appointed for years as a Broward County special magistrate for commercial real estate tax appeals. She has ruled over a billion dollars in complex commercial real estate transactions.

55. Plaintiff's magistrate rulings require elaborate work much more complex than appraising commercial real estate. These magistrate rulings demonstrate Plaintiff's expertise, her professionalism, her high competency and her very specialized appraisal knowledge. Yet, Newmark deemed her "stupid," and incompetent to the point her appraisal work was no longer worthy of a perfunctory signature.

56.  Plaintiff was forced to take a leave of absence on April 2020 and was diagnosed with a medical condition impacting her overall health. Her medical team deemed that the hostile work environment due to her superiors continuously berating and humiliating her was responsible for exacerbating Plaintiff's medical condition and irreparably damaging her health.

57. On or about October 26, 2020, while on medical leave,  Plaintiff sent her computer to Newmark's IT to get it updated to access her emails and documents. When Plaintiff asked for the status, she was told  the computer would not be returned because it was medical leave "policy" not to have a computer or access to files, email or company server.

58. Furthermore, Plaintiff's office at 1111 Brickell Avenue was taken away and reassigned to a younger, white male. Also, Antonia Donoso's office cubicle was reassigned and she was told to

work from home, None of this office/cubicle reassignment happened to any younger, white male at Newmark. It only happened to Antonia and Plaintiff, two older Hispanic females.

59. In contrast, another similarly situated white American Male on medical leave had not been denied his computer, company access to the server, and company files. Furthermore, his office was not reassigned.

60. Throughout Plaintiff's employment, Plaintiff has always performed the essential functions of her job duties and responsibilities in an exemplary fashion and at satisfactory and above satisfactory levels.

61. Any reason proffered by Defendant for the adverse employment actions is a mere pretext for unlawful discrimination.

**COUNT I**
***Discrimination based on Sex/Gender in Violation of the FCRA***

62. Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 61 of this Complaint as if set out in full herein.

63. At all times material hereto, Defendant failed to comply with the Florida Civil Rights Act of 1992 Florida Statutes Section 760.10, which in its relevant section states it is an unlawful employment practice for an employer to discriminate or discharge or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's sex/gender.

64. The applicable statute, FCRA, prohibits an employer from making employment decisions or from taking any personnel action affecting the terms, conditions, and privileges of one's employment, based upon sex/gender-conformity considerations or reasons.

65. Plaintiff is a female and employee of Defendant, and she possessed the requisite qualifications and skills to perform her position with Defendant.

66. While employed with Defendant, Plaintiff was subjected to discrimination and harassment based on her gender.

67. As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered great and irreparable economic harm and other associated losses such as emotional distress, physical ailments, humiliation, embarrassment, and economic losses.

68. Moreover, as a further result of Defendant's unlawful gender-based discriminatory conduct, Plaintiff has been compelled to file this action and she has incurred the costs of litigation.

69. Plaintiff was qualified for her position with Defendant.

70. Defendant violated the Florida Civil Rights Act of 1992 (FCRA) by discriminating against Plaintiff because of her gender in the terms, conditions, and privileges of employment.

71. Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights under Florida Statute Section 760, protecting a person from discrimination.

72. The aforementioned actions of Defendant were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court enter judgment against the Defendant; find that Defendant indeed violated the FCRA, and in addition, order the following additional relief:

a. Declare that the acts complained of herein violate the Florida Civil Rights Act;

b. Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

c. Award plaintiff back pay, front pay, lost benefits, and other damages for lost compensation and job benefits by Plaintiff in an amount not less than $10,000,000.

d.  Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates;

e.  Order Defendant to make Plaintiff whole, by compensating Plaintiff for lost wages, benefits, including front pay, back pay with prejudgment interest;

f.  For a money judgment representing prejudgment interest;

g.  Award any other compensation allowed by law including punitive damages not less than $50,000,000 and attorney's fees;

h.  Grant Plaintiff's costs of this action, including reasonable attorney's fees;

i.  Grant Plaintiff a trial by jury; and

j.  Grant such other and further relief as the Court deems just and proper.

## COUNT II
### *Discrimination Based on Age in Violation of the FCRA*

37. Plaintiff re-adopts every general and factual allegation as stated in paragraphs 1 through 61 above as if set out in full herein.

38. Plaintiff is a member of a protected class under the FCRA, to wit Plaintiff is over forty (40) years of age.

39. By the conduct described above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's age and subjected Plaintiff to age-based animosity.

40. Such discrimination was based upon Plaintiff's age in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is over the age of forty (40).

41. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its supervisory personnel were aware that discrimination based on Plaintiff's age was unlawful but acted in reckless disregard of the law.

42. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with Defendant.

43. Defendant retained all employees who exhibited discriminatory conduct toward Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

44. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

45.    Defendant's basis for the adverse conduct against Plaintiff, if any, are pretextual and illegitimate, asserted only to cloak the discriminatory nature of their conduct.

46. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and Defendant's failure to take prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under state and federal law.

47. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages under federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

48. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court enter judgment against the Defendant; find that Defendant indeed violated the FCRA, and in addition, order the following additional relief:

a.  Declare that the acts complained of herein violate the Florida Civil Rights Act;

b.  Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

c.  Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates;

d.  Order Defendant to make Plaintiff whole, by compensating Plaintiff for lost wages, benefits, including front pay, back pay with prejudgment interest;

e.  For a money judgment representing prejudgment interest;

f.  Award any other compensation allowed by law including punitive damages and attorney's fees;

g.  Grant Plaintiff's costs of this action, including reasonable attorney's fees;

h.  Grant Plaintiff a trial by jury; and

i.  Grant such other and further relief as the Court deems just and proper.

## COUNT III
### Disability Discrimination in Violation of the FCRA

49. Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 61 above as is set out in full herein.

50. Plaintiff has a disability that substantially limits one or more major life activities and is thus a member of a protected class under the FCRA.

51. Plaintiff was regarded as having a disability by Defendant and Defendant's agents.

52. By the conduct described above, Defendant has engaged in discriminatory conduct against Plaintiff because of Plaintiff's disability and subjected Plaintiff to disability-based animosity.

53. Such discrimination was based upon Plaintiff's disability in that Plaintiff would not have

been the object of discrimination but for the fact that Plaintiff has a medical disorder.

54. Plaintiff can and did perform the essential functions of her job with or without reasonable accommodation.

55. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its supervisory personnel were aware that discrimination based on Plaintiff's disability was unlawful but acted in reckless disregard of the law.

56. Defendant's discriminatory conduct was directly related to and because of Plaintiff's disability.

57. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with Defendant.

58. Defendant retained all employees who exhibited discriminatory conduct toward Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

59. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

60. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and Defendant's failure to take prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

61. The actions of the Defendant and/or its agents were willful, wanton, intentional, and made with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages under federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

62. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable

damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court enter judgment against the Defendant; find that Defendant indeed violated the FCRA, and in addition, order the following additional relief:

a. Declare that the acts complained of herein violate the Florida Civil Rights Act;

b. Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

c. Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates;

d. Order Defendant to make Plaintiff whole, by compensating Plaintiff for lost wages, benefits, including front pay, back pay with prejudgment interest;

e. For a money judgment representing prejudgment interest;

f. Award any other compensation allowed by law including punitive damages and attorney's fees;

g. Grant Plaintiff's costs of this action, including reasonable attorney's fees;

h. Grant Plaintiff a trial by jury; and

i. Grant such other and further relief as the Court deems just and proper.

## COUNT IV
### *National Origin Discrimination in Violation of the FCRA*

63. Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 61 of this Complaint as if set out in full herein.

64. As part of its protections, the FCRA prohibits national origin discrimination.

65. Plaintiff is a Hispanic individual of Cuban national descent and, thus, a member of a protected class under the FCRA.

66. Plaintiff was at all times qualified for her employment position.

67. Defendant's treatment of Plaintiff adversely affected Plaintiff's compensation, terms, conditions, privileges, and/or status as an employee because of national origin.

68. Plaintiff was treated adversely in comparison to similarly situated employees. Most notably, Plaintiff was consistently treated unequally in comparison to non-Hispanic Cuban employees.

69. Defendant's bases, if any, for its disparate treatment of Plaintiff are pretextual and illegitimate, asserted only to cloak the discriminatory nature of its conduct.

70. As a result of the complained conduct to which Plaintiff was subjected and the adverse employment actions suffered by Plaintiff related thereto, Plaintiff has experienced and will continue to experience significant financial and economic loss in the form of lost wages and lost benefits. Plaintiff has also experienced and will continue to experience emotional anguish, pain and suffering, and loss of dignity damages.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated the FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d.  Award Plaintiff the costs of this action, together with reasonable attorneys' fees; and

e.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT V
### *Sex/Gender Discrimination in Violation of Title VII*

72. Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 61  of this complaint as if set out in full herein.

73. Plaintiff is a member of a protected class under Title VII.

74. By the conduct described above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's sex/gender, and subjected Plaintiff to animosity based on sex/gender.

75. Such discrimination was based upon the Plaintiff's sex/gender in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is a woman.

76. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination based on sex/gender was unlawful but acted in reckless disregard of the law.

77. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with Defendant.

78. Defendant retained all employees who exhibited discriminatory conduct toward Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

79. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

80. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and Defendant's failure to take prompt remedial action to prevent continued

discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

81. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages under federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

82. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

    a. Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiffs' rights;

    b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

    c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

    d. Award Plaintiff the costs of this action, together with a reasonable attorney; and

    e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT VI
### *Age Discrimination in Violation of the ADEA*

83. Plaintiff re-adopts every fee general and factual allegation as stated in paragraphs 1 through 61 above as if set out in full herein.

84. Plaintiff is a member of a protected class under the ADEA, to wit Plaintiff is over forty

(40) years of age.

85.  By the conduct described above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's age and subjected Plaintiff to age-based animosity.

86.  Such discrimination was based upon Plaintiff's age in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is over the age of forty (40).

87.  Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination based on Plaintiff's age was unlawful but acted in reckless disregard of the law.

88.  At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with Defendant.

89.  Defendant retained all employees who exhibited discriminatory conduct toward Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

90.  As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

91.  The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and Defendant's failure to take prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

92.  The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages under federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

93.  Plaintiff has suffered and will continue to suffer both irreparable injury and compensable

damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated the ADEA and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d. Award Plaintiff the costs of this action, together with reasonable attorneys' fees; and

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT VII
### *Disability Discrimination in Violation of the ADA and ADAAA*

94. Plaintiff re-adopts every general and factual allegation as stated in paragraphs 1 through 61 of this complaint as if set out in full herein.

95. Title I of the ADA and the ADAAA prohibit employers from taking adverse employment action against an employee as a result of employee's actual disability, as a result of an employee's record of having such disability, and/or because the employer regards the employee as disabled, and further requires employers to reasonably accommodate the actual disabilities and/or records of such disabilities of their employees.

96. Plaintiff was a member of a protected class under the ADA and ADAAA, as she was on medical leave.

97. By the conduct described above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's disability and subjected Plaintiff to disability-based animosity.

98. Such discrimination was based upon Plaintiff's disability in that Plaintiff would not have been the object of discrimination but for the fact of Plaintiff's injury.

99. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its supervisory personnel were aware that discrimination based on Plaintiff's disability was unlawful but acted in reckless disregard of the law.

100. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with Defendant.

101. Defendant retained all employees who exhibited discriminatory conduct toward Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

102. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

103. The conduct Defendant, by and through the conduct of its agents, employees, and/or representatives, and Defendant's failure to take prompt remedial action to prevent continued discrimination against Plaintiff, deprived Plaintiff of statutory rights under federal law.

104. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages under federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

105. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

    a. Adjudge and decree that Defendant has violated ADA and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

    b. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

    c. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

    d. Award Plaintiff the costs of this action, together with reasonable attorneys' fees; and

    e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

**COUNT VIII**
***National Origin Discrimination in Violation of Title VII***

106. Plaintiff is under Title VII, 42 U.S.C. Section 2000 (e), sues Defendant, and re-alleges, as set forth herein, paragraphs 1 through 61 of this initial complaint.

107. At all times material hereto, the Employer/Defendant failed to comply with the Civil Rights Act of 1964 [42 U.S.C. 2000 e-2 (a)], which states, "It shall be an unlawful employment practice for an employer to (1) fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which

would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's race, color, religion, sex, or national origin."

108. The discrimination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's Cuban descent.

109. Defendant's decision to discriminate against Plaintiff was because of Plaintiff's Cuban national origin.

110. At all relevant times aforementioned, including the time of discrimination, Defendant was aware that Plaintiff was of Cuban descent.

111. At the time of this treatment from employment, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

112. Plaintiff has qualified for the position apart from her apparent national origin.

113. Plaintiff was discriminated against by her superiors because she was Hispanic.

114. The defendant is a sophisticated employer who has actual knowledge of the requirements of Title VII of the Civil Rights Act of 1964, as amended.

115. The failure of Defendant to adhere to the mandates of the Act was willful and its violations of the provisions of the Act were willful.

116. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's federally protected rights, discriminated against Plaintiff on account of her national origin in violation of Act concerning its decision to treat Plaintiff differently from other employees.

117. As a direct and proximate result of Defendant's intentional conduct, Plaintiff suffered serious economic losses as well as mental pain and suffering.

118. Any alleged nondiscriminatory reason for the termination of Plaintiff's employment asserted by Defendant is a mere pretext for the actual reason for the termination from employment, Plaintiff's national origin.

119. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting a person from discrimination due to their national origin. Discrimination based on national origin constitutes unlawful discrimination.

**WHEREFORE,** Plaintiff respectfully requests that this court order the following:

a. Grant a permanent injunction enjoining Defendant its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates based on national origin.

b. Order Defendant to make Plaintiff whole, by compensating Plaintiff for lost wages, benefits, including front pay, back pay with prejudgment interest, and other remuneration for mental pain, anguish, pain, and humiliation from employment termination due to her national origin.

c. For a money judgment representing prejudgment interest.

d. Award any other compensation allowed by law including punitive damages, attorney's fees and further demands a trial by jury on all issues so triable.

## COUNT IX
### *Hostile Work Environment in Violation of the Florida Civil Rights Act*

44. Plaintiff re-adopts each and every factual allegation as stated in 1 through 61  of this First Amended Complaint as if set out in full herein.

45. Defendant is an employer as that term is used under the applicable statutes referenced above.

46. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under the FCRA.

47. Plaintiff, as a female, is within a protected class as envisioned by the FCRA.

48. During her employment with Defendant, through its management and supervisors subjected Plaintiff to unwelcome verbal harassment.

49. The harassment Plaintiff endured was predicated on her being a Hispanic female individual of Cuban national origin over the age of fifty (50). The harassment is decidedly severe where Plaintiff was unnecessarily humiliated and berated by her male supervisors and managers to the point of making Plaintiff ill.

50. The harassment Plaintiff endured was severe and pervasive. Such conduct occurred during each of Plaintiff's shifts (not isolated to a single occurrence), is demonstratively abusive, and altered the conditions as of Plaintiff's employment as she could not complete her duties in a timely and orderly fashion due to the abuse. Finally, the conditions of Plaintiff's employment were ultimately altered/changed where she was constructively discharged due to the hostility in the workplace.

51. Defendant is liable for this conduct, either vicariously or directly, where Plaintiff complained to human resources, management and ownership about the harassment and abuse and no remedial or disciplinary was undertaken.

52. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.

53. These damages are continuing and are permanent.

## COUNT X
### *Hostile Work Environment in Violation of Title VII*

44. Plaintiff re-adopts each and every factual allegation as stated in 1 through 61  of this Complaint as if set out in full herein.

45. Defendant is an employer as that term is used under the applicable statutes referenced above.

46. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under Title VII.

47. Plaintiff, as a female, is within a protected class as envisioned by the Title VII.

48. During her employment with Defendant, through its management and supervisors subjected Plaintiff to unwelcome verbal harassment.

49. The harassment is decidedly severe where Plaintiff was unnecessarily humiliated and berated by her male supervisors and managers to the point of making Plaintiff ill.

50. The harassment is decidedly severe where Plaintiff was unnecessarily humiliated and berated by her male supervisors and managers.

51. The harassment Plaintiff endured was severe and pervasive.  Such conduct occurred during each of Plaintiff's shifts (not isolated to a single occurrence), is demonstratively abusive, and altered the conditions as of Plaintiff's employment as she could not complete her duties in a timely and orderly fashion due to the abuse. Finally, the conditions of Plaintiff's employment were ultimately altered/changed where she was constructively discharged due to the hostility in the workplace.

52. Defendant is liable for this conduct, either vicariously or directly, where Plaintiff complained to human resources, management and ownership about the harassment and abuse and no remedial or disciplinary was undertaken.

53. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.

54. These damages are continuing and are permanent in nature.

## COUNT XI
### Race Discrimination in Violation of 42 U.S.C. § 1981

46. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 61 of this complaint as if set out in full herein.

47. Plaintiff is a member of a protected class under § 1981.

48. By the conduct describe above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's race and subjected the Plaintiff to race-based animosity.

49. Such discrimination was based upon the Plaintiff's race in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is Hispanic.

50. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of race was unlawful but acted in reckless disregard of the law.

51. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

52. Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

53. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights,

has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

54.    The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

55.    The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

56.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

57.    So that Plaintiff's rights may be protected, Plaintiff has retained the undersigned counsel who is entitled to attorney's fees pursuant to 42 U.S.C. § 1988, the Civil Rights Attorneys Fee Award Act.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

a.    Adjudge and decree that Defendant has violated 42 U.S.C. § 1981, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.    Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

    c.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

    d.  Require Defendant to award front pay to Plaintiff;

    e.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

    f.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

### COUNT XIII
*Collective Action Pursuant to §216b for Discrimination in Compensation under the Equal Pay Act of 1963, 29 U.S.C. §206 et seq.*

73.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 61 of this complaint as if set out in full herein.

74.    This action is brought by Plaintiff and other similarly-situated individuals to recover back pay damages for Defendant's violation, as well as an additional amount as liquidated damages equal to the amount of back pay awarded, costs, and reasonable attorney's fees under the provisions of the EPA.

75.    Plaintiff belongs to a protected class; she is a female.

76.    Plaintiff job function was and is the of equal skill, effort, and responsibility as the job functions of Defendant's male employees who performed their work under the same or similar conditions.

77.    During all relevant period, Plaintiff received wages lower that most if not all, of Defendant's similar male employee's wages while performing the same or substantially more work than her male coworkers.

78. Plaintiff was qualified for and entitled to wages equal to or higher than her male coworkers' wages performing the equal and/or same or at times substantially more work than her male counterparts.

79. Defendant violated the EPA in not paying Plaintiff and other similarly situated females on par with their male counterparts; Plaintiff is entitled to damages and equitable relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

    a. Adjudge and decree that Defendant has violated the EPA and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights.

    b. Award Plaintiff actual damages in the amount shown to be due, with interest; and

    c. Award Plaintiff an equal amount in double damages/ liquidated damages; and

    d. Award Plaintiff the cost of this action, together with reasonable attorney's fees; and

    e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

### JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: November 23, 2021                            Respectfully submitted,

                                        /s/:*Peter M. Hoogerwoerd*
                                        Peter M. Hoogerwoerd, Esq.
                                        Fla. Bar No.: 0188239
                                        pmh@rgpattorneys.com
                                        Cristobal Bobadilla-Gamboa
                                        Fla. Bar. No. 113656
                                        cbg@rgpattorneys.com
                                        ***Remer & Georges-Pierre, PLLC***
                                        44 West Flagler Street, Suite 2200
                                        Miami, FL 33130
                                        (305) 416-5000- Telephone
                                        (305) 416-5005- Facsimile