UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA STOCKING,

                    Plaintiff,

              – against –

NEWMARK KNIGHT FRANK
VALUATION & ADVISORY, LLC,

                    Defendant.

**OPINION & ORDER**

22-cv-7347 (ER)

RAMOS, D.J.:

Maria Stocking, who is *pro se*, brought this action against her former employer, Newmark Knight Frank Valuation & Advisory, LLC ("Newmark"), for alleged discrimination and retaliation in the workplace based on race, age, gender, and disability under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL).  Doc. 52 (First Amended Complaint ("FAC")) ¶ 1.

Before the Court are nine requests filed by Maria Stocking on February 20, 2024 (Doc. 69), October 29 (Doc. 117), October 31 (Doc. 118), November 13 (Doc. 124), November 21 (Doc. 133), November 22 (Docs. 135, 139), December 13 (Doc. 149) and December 19 (Doc. 154), respectively.

I.      BACKGROUND

     A.  Factual Background

In March 2013, Stocking joined G&E Appraisal Services, LLC, an affiliate of Newmark, as a real estate appraiser.  Doc. 70 at 2; Doc. 73 at 1.[1]  Stocking executed an

---

[1] The factual background is primarily derived from Newmark's brief in support of the motion, Doc. 70, and Stocking's brief in opposition to the motion, Doc. 73.

employment agreement ("the Agreement") on March 11, 2013, that set forth the terms and conditions of her employment, including a forum selection clause and a waiver of a jury trial in the event of any legal dispute between the parties. Doc. 70 at 2. Section 9 of the Agreement, titled "Dispute Resolution," states that

> any disputes, differences, claims, or controversies arising at any time under this Agreement or Appraiser's employment shall, to the maximum extent permitted by applicable law, be brought before, settled, and finally determined by, a court of competent jurisdiction in the Borough of Manhattan, New York City, New York, and such court shall have exclusive jurisdiction over any such dispute or action. The parties expressly waive their right to any trial before jury . . . .

Doc. 71-1 § 9. The Agreement stipulates that the terms and conditions apply from March 12, 2013, until either party terminates Stocking's employment. *Id.* at 1. Stocking alleges that she signed the contract without counsel and was not aware of the clause waiving her right to a jury. Doc. 73 at 1.

In 2014, Stocking was promoted to Director of the Miami office—a position that came with different responsibilities than those in the 2013 Agreement. *Id.* Stocking alleges that the executive managing director of Newmark told her that she would receive a new contract, but she never received one. *Id.* at 2; FAC ¶ 60.

Newmark, however, asserts that Stocking did execute an amended agreement in July 2017 (hereinafter the "July 2017 Amendment") that modified only Section 3 of the Agreement, titled "Compensation during the Term of Agreement." Doc. 70 at 2; Doc. 71-1 at 2; Doc. 71-3. Newmark provides a copy of the July 2017 Amendment, signed by Stocking, that additionally states: "all other terms and conditions of the Agreement remain in effect." Doc. 71-3 at 1. This amendment includes a handwritten change to Stocking's residential address that Newmark alleges Stocking inserted herself. *Id*; Doc. 75 at 3. Stocking claims that she never received the July 2017 Amendment. Doc. 73 at 2.

Stocking actively worked until April 2020 when she went on medical leave allegedly due to illness caused by the prolonged discrimination and retaliation she

2

endured.  FAC ¶ 14.  On November 12, 2024, Newmark terminated Stocking's

employment, and notified her that enrollment in Newmark's health insurance plan would

terminate after November 30, 2024.  Doc. 134 at 2.

### B.  Procedural History

Stocking initially sued Newmark in Florida state court on November 23, 2021,

alleging claims of discrimination and retaliation.  Doc. 52 ¶ 8.  On January 20, 2022,

Newmark removed the case to the United States District Court for the Southern District

of Florida.  *Id.* ¶ 9.  On February 3, 2022, Newmark moved to transfer the case to this

District based on the forum selection clause in the Agreement.  *Id.*; Doc. 70 at 2–3.  The

Florida district court granted the change in venue on August 28, 2022.  FAC ¶ 9.

Stocking filed the FAC on May 11, 2023.  *Id.*  Newmark answered on June 15, 2023.

Doc. 56.  On June 16, 2023, the parties were referred to mediation, which was reported

on September 25, 2023 to be unsuccessful.  Doc. 58.

On February 20, 2024, Newmark filed a motion to strike Stocking's jury demand.

Doc. 69.  On August 16, 2024, Stocking's counsel moved to withdraw as her attorney

based on irreconcilable differences, and on August 19, the Court granted that motion.

*See* Doc. 86-1; Doc. 87.  On September 27, 2024, the Court held a conference to address

a number of pending applications, including Stocking's motion to compel Newmark to

produce certain documents concerning its relationship with its law firm Cole, Scott &

Kissane, P.A., (CSK) which the Court denied without prejudice.  *See* Doc. 114.

On October 29, 2024, Stocking requested leave to serve an interrogatory

regarding Newmark's ownership interest in certain properties.  Doc. 117.  On October 31,

2024, Stocking requested leave to issue a "conditional" subpoena to Jane Doe, a former

Newmark employee, for a deposition upon written questions, and for a protective order to

protect the identity of Jane Doe.  Doc. 118.  On November 13, 2024, Stocking filed an

emergency request for a Court order requiring that Newmark reinstate her employer-

provided health insurance coverage and for increased sanctions.[2]  Doc. 124.  On
November 21, 2024, Stocking filed a letter requesting (1) an order to strike a filing by
Newmark, Doc. 121, which identified Jane Doe by name, and (2) an order directing
Newmark to re-file a redacted version of Doc. 121, as well as (3) renewing her requests
for a subpoena to non-party Jane Doe for a deposition upon written questions, and for a
protective order to protect Jane Doe's identity.  Doc. 133.  On November 22, 2024,
Stocking requested that Doc. 85—a declaration and accompanying exhibits that she
previously filed on August 15, 2024—be admitted "into evidence to support her claims in
this case."  Doc. 135.  On November 22, 2024, Stocking additionally requested the Court
grant her leave to amend or correct any future filings.  Doc. 139.  On December 13, 2024,
Stocking filed a letter withdrawing her request for reinstatement of health benefits, Doc.
149, and on December 19, 2024, she submitted a revised version of that submission.
Doc. 154.

The Court will analyze each of Stocking's requests, in turn.

## II.    NEWMARK'S MOTION TO STRIKE JURY DEMAND

### A.  Legal Standard

Although the Seventh Amendment guarantees the right to a jury trial, parties may
waive that right in an agreement entered into knowingly and voluntarily.  *Mazzocchi v.
Windsor Owners Corp.*, No. 11 Civ. 7913 (RA), 2022 WL 16840273, at *1 (S.D.N.Y. Oct.
5, 2022) (quoting *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 705
(S.D.N.Y. 2011)).  This requirement is "'strictly enforced,' and the party seeking to
enforce the jury waiver clause bears the burden of showing that the waiver was knowing
and voluntary."  *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F.
Supp. 3d 673, 685 (S.D.N.Y. 2018) (quoting *Sherrod v. Time Warner Cable, Inc.*, No. 14
Civ. 1471 (JLC), 2014 WL 6603879, at *2 (S.D.N.Y. Nov. 21, 2014)).  Courts consider

---

[2] Stocking previously filed a motion for sanctions on August 27, 2024, Doc. 93.  The Court will consider
both motions for sanctions in tandem, once the parties have completed their briefing on that motion.

four factors to determine whether the waiver was entered into knowingly and voluntarily: "(1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; (2) the conspicuousness of the waiver provision in the contract; (3) the relative bargaining power of the parties; and (4) the business acumen of the party opposing the waiver." *Morgan Guaranty Trust Co. of New York v. Crane*, 36 F. Supp. 2d 602, 604 (S.D.N.Y. 1999); *see also In re Lifetrade Litigation*, No. 17 Civ. 2987 (JPO) (KHP), 2023 WL 6785810, at *4 (S.D.N.Y. Oct. 13, 2023) (applying the *Morgan Guaranty* factors to determine whether a contractual waiver of a right to a jury trial was entered into knowingly and voluntarily).

### B.  Discussion

All four factors weigh in favor of enforcement of the jury trial waiver. *See Morgan Guaranty*, 36 F. Supp. 2d at 604.[3]

For the first factor, courts have found evidence of negotiability in a contract when a party has the opportunity to review and revise the documents prior to signing them. *Wechsler v. Hunt Health Systems, Ltd.*, No. 94 Civ. 8294 (PKL), 2003 WL 21878815, at *3 (S.D.N.Y. Aug. 8, 2003).  "Negotiability does not require evidence of actual negotiation over the waiver provision or even over the contract itself; the negotiability prong is satisfied as long as there was an opportunity for negotiation, even if the party opposing the waiver did not avail himself of that opportunity." *Lehman Bros. Holdings Inc. v. Bethany Holdings Groups, LLC*, 801 F. Supp. 2d 224, 231 (S.D.N.Y. 2011).

Here, the negotiability of the March 2013 Agreement is evidenced by the "v2" in its bottom left corner, indicating it is the second version of the document.  Doc. 70 at 4–5; Doc. 71-1.  Newmark argues that the primary difference between the second version and

---

[3] As a threshold matter, Newmark argues that Stocking cannot contest the validity of the Agreement since, when Newmark moved to transfer the case from Florida to this district, the Florida court found that the Agreement was enforceable; therefore, Newmark argues, "that is now the law of the case and cannot be contested here."  Doc. 75 at 3.  Because a straightforward application of the four-factor test clearly shows that the waiver is enforceable, the Court need not reach the question whether the enforceability of the jury waiver clause has been resolved by the Florida court's holding.

the original February 2013 version concerns the Agreement's post-termination non-compete provision, in which Newmark agrees to include Section 6(c), a list of "Excluded Clients." Doc. 70 at 5. Newmark claims that the list "could only have come from [Stocking] and provides incontrovertible proof" that the Agreement was negotiated. *Id.* Stocking argues that the "Excluded Clients" list is not proof that the Agreement was negotiated because the list "was given to [the executive managing director] to be included in Plaintiff's new contract, reflecting Plaintiff's [new] position of Director" and Stocking allegedly never received such a contract. *Id.* at 5. To the contrary, the "Excluded Clients" list is included in the March 2013 Agreement, executed before Stocking's 2014 promotion. Doc. 71-1 at 11.

Stocking also executed the July 2017 Amendment, which modified her compensation structure but otherwise incorporated "all other terms and conditions" of the 2013 Agreement. Doc. 71-3 at 1. The negotiability of the July 2017 Amendment is evidenced both by its incorporation of the 2013 Agreement as well as by Stocking's handwritten modifications to her address, reflected in the first paragraph of the July 2017 Amendment. Doc. 71-3 at 1. *Cf. Sullivan v. Ajax Navigation Corp.*, 881 F. Supp. 906, 911 (S.D.N.Y. 1995) (finding a contract was non-negotiable because plaintiff had no other choice other than to accept the contract as written). Given the July 2017 Amendment incorporated the Agreement, the Agreement's terms and conditions remained in effect. Doc. 71-1 at 1. Therefore, Stocking remained a Newmark employee pursuant to the terms of the Agreement throughout her tenure, and the jury waiver clause continued to apply. Doc. 75 at 3. While Stocking argues that a role change not reflected in a new contract makes the original Agreement unenforceable,[4] the cases she relies on are not relevant here. *See* Doc. 73 at 5.[5] Newmark's exhibits indisputably show that

---

[4] Stocking became "Director of the Miami office" in 2014, Doc. 73 at 1–2, yet the July 2017 Amendment still referred to her as "Appraiser," Doc. 71-3.

[5] Stocking cites three cases that do not address the issue of whether a role change makes an original employment agreement unenforceable. *Candid Productions Inc. v. International Skating Union*, 530 F.

Stocking executed the July 2017 Amendment, that the Amendment did not modify the

jury waiver in the March 2013 Agreement, and that the agreements remain valid until

either party terminates her employment.  Accordingly, the Court finds there was a valid

July 2017 amendment to the Agreement that incorporated the jury waiver clause.

Second, Newmark points to the "Dispute Resolution" section of the Agreement to

satisfy the requirement that the waiver provision is conspicuous.  Factors to consider

when evaluating whether a waiver provision is so embedded and hidden in a text that it

cannot be enforced include the placement of the waiver, the size and style of the font, and

the location of the provision within the entire document.  *Wechsler*, 2003 WL 21878815,

at *5.  Newmark claims the jury waiver was sufficiently conspicuous because of its

placement, clarity, and same font and size as the rest of the Agreement.  Doc. 70 at 6.

Stocking does not dispute that the jury waiver clause was conspicuous.  This factor

therefore weighs in favor of enforcing the waiver.

The third and fourth factors, bargaining power and business acumen, also favor

Newmark.  Courts have found parties with no legal background and business experience

similar to Stocking's have sufficient business acumen.  *See Lehman Bros. Holdings Inc.

v. Bethany Holdings Group, LLC*, 801 F. Supp. 2d 224, 232 (S.D.N.Y. 2011) (granting

plaintiff's motion to strike jury demand where defendant "built and ran a national

enterprise" as well as "negotiated loans for his corporation and reviewed loan

documentation, was involved in the purchase and sale of real estate, and participated in

negotiations for the $175 million sale of his business in 2006"); *Morgan Guaranty*, 36 F.

---

Supp. 1330, 1338 (S.D.N.Y. 1982), held that the good faith negotiation clauses in contracts were too vague
and indefinite to be enforceable.  *Vian v. Carey*, No. 92 Civ. 0485 (MBM), 1993 WL 138837, at *1
(S.D.N.Y. April 26, 1993), concerns whether an oral contract existed.  Lastly, *Merill Lynch & Co. Inc. v.
Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007), held that a jury waiver is enforceable even when
there is an allegation of fraudulent inducement relating to the contract as a whole, unless the party alleges
the jury waiver itself was induced by fraud.  Here, the Agreement is not alleged to be vague, it is a written,
not oral contract, and there are no allegations of fraud concerning the jury trial waiver.

Supp. 2d at 604 (finding experience in sophisticated business transactions and negotiations supports a sufficient level of business acumen).

Here, Stocking argues Newmark had more bargaining power because an attorney drafted its contract, while she did not have an attorney.  Doc. 73 at 4.  While true, this argument is unavailing, as other courts have found "knowing and voluntary waiver[s] even absent representation by counsel."  *American Equities Group, Inc. v. Avaha Dairy Prods. Corp.*, No. 02 Civ. 5207 (RWS), 2007 U.S. Dist. LEXIS 93511, at *6–7 (S.D.N.Y. Dec. 13, 2007) (citing *Orix Credit Alliance, Inc. v. Better Built Corp.*, No. 89 Civ. 7333 (JFK), 1990 WL 96992, at *2 (S.D.N.Y. July 2, 1990) ("Although the presence of counsel at contract negotiations is recommended, the absence of counsel by itself does not destroy the validity of agreements signed or create an unequal bargaining position.")).

Newmark points to Stocking's extensive commercial real estate career to argue that she possessed sufficient business acumen and bargaining power at the time the contract was signed.  Doc. 70 at 6.  Moreover, Stocking herself claims she has had a thirty-year career with professional licenses and multiple clients.  FAC ¶ 12.  Her duties included "procuring her clients, managing staff, reviewing reports, and doing her own commercial Real Estate Appraisals."  *Id.* ¶ 15.  She also alleges that she was appointed as a Broward County special magistrate for commercial real estate tax appeals and ruled over billions of dollars in complex real estate transactions.  *Id.* ¶ 56.  Accordingly, the Court finds Stocking had sufficient bargaining power and business acumen at the time she signed the 2013 and July 2017 agreements.

Based on the four relevant factors, the Court finds that Stocking knowingly and voluntarily waived her right to a jury trial in the 2013 and July 2017 Agreements.[6]

---

[6] Stocking also argues that public policy calls for her NYCHRL and NYSHRL claims to be heard by a jury due to the progressive nature of those laws.  Doc. 73 at 9.  As Newmark states, however, New York state and federal courts "regularly enforce provisions waiving jury trials and compelling arbitration" for claims alleging violations of the NYSHRL and NYCHRL.  Doc. 75 at 4; *see, e.g.*, *Lang v. Barclays Servs. Corp.*, No. 17 Civ. 8094 (PGG), 2019 U.S. Dist. LEXIS 251542 (S.D.N.Y. Mar. 19, 2019); *Badinelli v. The Tuxedo Club*, 183 F. Supp. 3d 450 (S.D.N.Y. 2016); *Hines v. 1025 Fifth Ave.*, No. 14 Civ. 3661 (SAS), 2015 U.S.

### III.  STOCKING'S REQUEST FOR LEAVE TO SERVE AN INTERROGATORY

On October 29, 2024, Stocking requested leave to serve Newmark with an interrogatory asking whether it has—or previously had—ownership interests in five specific properties leased by the law firm CSK.  Doc. 117.

By way of background, CSK represented Newmark before Stocking's case was transferred to this district on February 3, 2022.  Doc. 122 at 1.  Stocking previously alleged in her motion to compel discovery that CSK was motivated to obstruct justice in this case, stemming from "its longstanding relationship with Newmark, which consistently provided CSK preferential real estate terms unavailable to others," such that "[s]ecuring [Newmark] favorable outcomes in Plaintiff's claims presented CSK with an opportunity to reciprocate those past favors, strengthening its business ties with Newmark and securing future financial and professional advantages."  Doc. 97 at 2.  Stocking has additionally claimed that "intertwined relationships" involving Newmark and CSK created "severe conflicts of interest that directly compromised the fairness and impartiality of the legal proceedings, unfairly favoring Newmark."  *Id.*; *see also* Doc. 85.  In particular, she has asserted that Peter Hoogerwoerd, one of the attorneys who formerly represented her in Florida, before the case was transferred,[7] previously "worked for CSK and maintained close ties with them for over 20 years."  Doc. 85 at 10.

In the instant request for leave to serve an interrogatory, Stocking claims that the discovery she seeks could help establish that Newmark functioned as a landlord to CSK, which in turn would be relevant to Stocking's "claims of conflict of interest, spoliation of evidence, obstruction of justice, and relevant defenses."  Doc. 117 at 3.

---

Dist. LEXIS 21497 (S.D.N.Y. Feb. 23, 2015); *Arzu v. Spandrel Prop. Servs., Inc.*, 100 A.D.3d 462 (1st Dep't 2012).  Accordingly, the jury waiver clause is valid and enforceable in the instant case.

[7] Peter M. Hoogerwoerd and Corey L. Seldin, of law firm Remer & Georges-Pierre, PLLC, represented Stocking before her case was transferred to this District.  On August 18, 2022, Hoogerwoerd and Seldin filed an unopposed motion to withdraw as Stocking's attorneys based on irreconcilable differences.  Doc. 29.  The Southern District of Florida court granted the motion that day.  *See* Paperless Order entered on August 18, 2022.

Newmark opposes Stocking's request. Doc. 122. It states the Court has already denied without prejudice Stocking's motion to compel discovery regarding Newmark's potential relationship with CSK's properties and the instant request "sets forth no new basis for this Court to change its previous order." *Id.* at 1. Newmark also argues that such discovery falls outside the scope of Rule 26(b)(1). Newmark points to Stocking's claim that CSK was incentivized "to obtain a good result for Newmark, when this case was pending in Florida" based on a conflict of interest, *id.* at 4, calling it "nonsensical," given "[i]t was CSK's obligation and duty to zealously advocate to secure favorable outcomes for [Newmark]." Doc. 122 at 4. Newmark also argues that, in any event, any information reflecting the supposed ownership interests "would not support any alleged 'conflict of interest, spoliation of evidence, [or] obstruction of justice.'" *Id.* Newmark adds that it previously objected to Plaintiff's discovery requests concerning CSK—as irrelevant to the discrimination claim, overbroad, unduly burdensome, and constituting a "fishing expedition"—yet Plaintiff "has made no attempts to meet and confer with Newmark." *Id.* at 3.

Stocking responds, first, that there are in fact new bases supporting the instant request. Doc. 130. Namely, she claims she has recently learned that Newmark and CSK "also engaged in a general contractor type relationship where Newmark built out some of CSK's office space," and that Newmark indeed has ownership interests in the five properties identified in the proposed interrogatory. Doc. 130 at 2. Stocking also asserts, as a basis for the request, that Doc. 85—a declaration she previously submitted in this case—shows CSK and Newmark colluding with Hoogerwoerd, who represented Stocking in this matter until August 18, 2022, "to illicitly ensure favorable outcomes for Newmark." *Id.* at 3. Second, as to relevance, Stocking states that Rule 26(b)(1) includes information pertinent to "any misconduct occurring during litigation," and here, she "seeks to establish whether Newmark's relationship with CSK created a situation that contributed to spoliation and obstruction." Doc. 130. at 3, 7. Third, Stocking argues a

real estate relationship between an attorney and his client *can* create a conflict of interest since "[u]nder ABA Model Rule 1.7(a)," a conflict of interest may exist "when the attorney's personal or financial interests materially limit their ability to represent the client." *Id.* at 4.  Fourth, Stocking disputes Newmark's objections to her discovery requests by walking through her allegations of misconduct and obstruction of justice, including the claim that her former counsel, Hoogerwoerd, "was promoted to partner . . . in his firm within ten days of delivering favorable outcomes for Newmark, even though these outcomes inflicted significant losses to his law firm." *Id.* at 6.[8]  She adds that Newmark can no longer claim her requests are overbroad given her proposed interrogatory seeks a simple "yes/no" answer as to whether an ownership interest exists with each property.  *Id.* at 7.  Finally, Stocking accuses Newmark of falsely stating the parties have not met-and-conferred, as the parties had a one-hour conference on November 1, 2024, in which they discussed discovery relating to Stocking's "medical diagnosis." *Id.* at 4.

The Court does not find the instant request to be on firmer footing than Stocking's prior request to compel discovery of a potential real-estate relationship between Newmark and CSK, which this Court denied without prejudice on September 26, 2024. *See* Doc. 114.  While the interrogatory is not facially burdensome given it seeks "yes/no" answers, it is also not relevant, and therefore not proportional, to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  In particular, even if the interrogatory responses were to establish that there was a landlord-tenant relationship between Newmark and CSK, such a garden-variety arms-length business relationship would not constitute a sufficient basis for concluding that CSK had an interest that conflicted with its extant obligation to zealously represent Newmark.  The Court also finds no indication in the record that such

---

[8] However, the relevance of or purported conflict of interest involving Hoogerwoerd's current law firm is unclear; Newmark has previously noted that, according to Hoogerwoerd's LinkedIn, he was only employed by CSK "from June 2010 to June 2013, more than eight years before he was retained by Plaintiff in or about October 2021." Doc. 107 at 3.

information would bear on the claims of spoliation or obstruction of justice against Newmark.  The Court thus DENIES Stocking's request for leave to serve the interrogatory.

## IV.    STOCKING'S REQUESTS FOR LEAVE TO ISSUE A SUBPOENA FOR JANE DOE, FOR A PROTECTIVE ORDER, AND FOR REDACTING JANE DOE'S NAME

Stocking alleges that non-party Jane Doe, a former Newmark employee, was directed to clear Stocking's office while Stocking was on medical leave, and that by disposing of documents relevant to the instant case, Jane Doe contributed to spoliation of evidence.  Doc. 118 at 2.  Stocking additionally states that Jane Doe has expressed reluctance to participate in this case, and that "[s]he declined to provide an affidavit citing apprehension of professional retaliation due to her ongoing employment in the commercial real estate sector, where Newmark wields substantial influence."  *Id.*

On October 31, 2024, Stocking filed a request for (i) leave to issue a "conditional" subpoena for a deposition upon written questions of Jane Doe, pursuant to Federal Rule of Civil Procedure 31, and (ii) a protective order to protect Jane Doe's identity, pursuant to Federal Rule of Civil Procedure 26(c).  Doc. 118.

On November 21, 2024, Stocking filed a letter requesting an order to strike Newmark's filing which identified non-party Jane Doe by name, Doc. 121, and an order directing Newmark to re-file a version of Doc. 121 that redacts Jane Doe's name.  Doc. 133.  Stocking also reasserted her requests for leave to issue a subpoena to Jane Doe for a deposition upon written questions, and for a protective order to protect Jane Doe's identity.  *Id.*

### A.  Requests For Issuance of a Subpoena

In Stocking's October 31 filing, she explains that, by requesting leave to issue a "conditional" subpoena to depose Jane Doe via written questions, she asked that the subpoena "only become active" if Newmark failed to provide "sufficient admissions or

evidence through discovery responses" regarding directives allegedly made to Jane Doe. Doc. 118 at 3.  In her November 21 filing, Stocking renews her request for issuance of a subpoena to Jane Doe for a deposition upon written questions; however, she does not condition her request on Newmark's discovery responses.  Doc. 133 at 3.

In its opposition to the October 31 request, Newmark argues Stocking's request was premature, as Stocking conceded the subpoena would be "only necessary" if Newmark provided deficient responses to discovery requests, yet Newmark had not provided any responses.[9]  In the alternative to denial, Newmark requested the Court extend the deadline for Newmark to respond substantively to the motion for leave until after interrogatory responses are due on November 29, 2024.  Doc. 121.  Newmark "takes no position" as to the deposition taking place through written questions, "so long as all the requirements of Federal Rule of Civil Procedure 31 are met."  *Id.* at 4.

The Court agrees that Stocking's request for a "conditional" subpoena is premature given it is conditioned on circumstances that had not yet occurred.  The Court therefore DENIES Stocking's request for leave to issue the subpoena without prejudice to reapply if, upon review of the discovery responses, she continues to believe that the deposition via written questions is necessary, and that leave of court pursuant to Federal Rule of Civil Procedure 31(a)(2) is required.[10]  To the extent Stocking's November 21

---

[9] Newmark filed its opposition to the October 21 request on November 8, 2024, and at that time, its discovery responses were due on November 29, 2024.  *Id.* at 3–4.

[10] According to Federal Rule of Civil Procedure 31(a)(1), parties are generally *not* required to obtain leave of court to depose a person via written questions, unless one of the exceptions contained in subsection 31(a)(2) applies.  Federal Rule of Civil Procedure 31(a)(2) provides:

"A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):

(A) if the parties have not stipulated to the deposition and:

(i) the deposition would result in more than 10 depositions being taken under this rule or Rule 30 by the plaintiffs, or by the defendants, or by the third-party defendants;

(ii) the deponent has already been deposed in the case; or

(iii) the party seeks to take a deposition before the time specified in Rule 26(d); or

(B) if the deponent is confined in prison."  Fed. R. Civ. P. 31(a)(2).

request for a subpoena is a separate request, the Court likewise DENIES it without prejudice, as moot, given it repeats Stocking's earlier request for leave to issue the subpoena, albeit without conditioning the request on Newmark's discovery responses. *See* Doc. 118.

## B.  Request For A Protective Order

Stocking requests a protective order to safeguard Jane Doe's anonymity and protect her from potential stress, exposure, and retaliation.  Docs. 118 at 3, 133 at 3.

Newmark responds that it "sees no basis for the deponent to remain anonymous as [Stocking herself] has identified [Jane Doe] by name in the Interrogatories and there is nothing 'sensitive' about testimony concerning the process for mailing Plaintiff her personal belongings."  Doc. 121 at 4.  Newmark additionally argues that Stocking's concerns of retaliation are unfounded, and that her stated purpose of concealing Jane Doe's identity from *Newmark*, not from the public, has been mooted by Stocking identifying Jane Doe by name in written discovery and in meet-and-confer discussions.  *Id.* at 3.

The Court concludes that a pseudonym is not needed for Jane Doe.  The instant case does not concern issues that are highly sensitive or even personal to Jane Doe, nor would maintaining her anonymity in public records decrease any risk of retaliation given Stocking has used her name in discovery.  Stocking has not provided any legal authority showing courts apply a less demanding standard in considering the anonymity of non-parties parties as compared to the anonymity of parties to a proceeding.[11]  The Court thus agrees with Newmark that it is not necessary to maintain Jane Doe's anonymity in the instant case.  Specifically, Stocking premises the motion on the possibility that Newmark will retaliate against Doe, but Newmark is fully aware of Doe's identity.  For the same

---

[11] In considering the anonymity of parties, courts apply a pseudonym only in "extraordinary" cases, "particularly those that implicate serious individual privacy concerns," given "the vital purpose of facilitating public scrutiny of judicial proceedings."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008).

reasons, the Court does not find good cause for a protective order pursuant to Federal Rule of Civil Procedure 26(c)(1). *See U.S. Commodity Futures Trading Comm'n v. Parnon Energy, Inc.*, 593 F. App'x 32, 36 (2d Cir. 2014) (internal citation omitted) ("[Rule 26(c)] confers broad discretion on the trial court to decide when a protective order is appropriate."). The Court DENIES Stocking's requests for a protective order for the identity of Jane Doe, Docs. 118, 133.

### C. Request For Redacting Jane Doe's Name

For the same reasons, Newmark argues that the Court should deny Stocking's request that the Court order Newmark to strike and re-file Doc. 121 redacting Jane Doe's name. Doc. 148 at 2–3. However, in the alternative, Newmark states that it "takes no issue with redacting its original filing." *Id.*

The Court DENIES Stocking's request for an order requiring Newmark to strike and re-file a redacted version of Doc. 121, on grounds that Jane Doe's anonymity is not warranted in the instant case, as discussed above.

## V.    STOCKING'S REQUEST TO REINSTATE HEALTH INSURANCE AND FOR INCREASED SANCTIONS

On November 13, 2024, Stocking filed a request for a Court order requiring Newmark to reinstate her employer-provided health insurance coverage. Doc. 124. Stocking additionally requested increased sanctions.[12] Doc. 124. Stocking argued, in part, that her employment and health insurance were terminated as part of Newmark's "illegal retaliatory move aimed at obstructing justice," namely, its efforts to "harm [Stocking's] health and well-being" and to impede her ability to effectively litigate her claims. *Id.* at 2.

---

[12] Stocking requests that sanctions be increased from $500 million to $600 million, in light of Newmark's "blatant disregard for the law and humanity," and its "deliberate interference with [Stocking's] health and well-being." *Id.* at 2, 4. Newmark responds that it will address that request in responding to Stocking's separate motion for sanctions, Doc. 93, in accordance with the briefing schedule that the Court has set; the Court most recently extended Newmark's deadline to respond to fourteen calendar days after the entry of this Court order, Doc. 159. The Court defers judgment on Stocking's requests for sanctions until the parties' briefing on her initial request for sanctions, Doc. 93, is complete.

On December 13, 2024, Stocking filed a letter withdrawing her request for reinstatement of health benefits because she has secured other health coverage. Doc. 149. However, in Stocking's December 13 submission, as well as in a December 19 submission, she argued that Newmark's termination of her employment and health benefits was retaliatory. Docs. 149, 154.

Therefore, the Court DENIES as moot Stocking's request for injunctive relief directing reinstatement of health benefits. However, the Court construes Stocking's arguments for sanctions for alleged retaliation, contained in Docs. 124, 149 and 154, to be preserved.[13] *See Jules v. Andre Balazs Props.*, No. 20 Civ. 10500 (LGS), 2023 WL 5935626, at *2 (S.D.N.Y. Sept. 12, 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)) ("A pro se litigant's papers must be construed liberally 'to raise the strongest arguments they suggest.'").

The Court will address the parties' arguments regarding sanctions once briefing on Stocking's motions for sanctions, Docs. 93, 124, is complete.

## VI.    STOCKING'S REQUEST TO SUBMIT EVIDENCE

On November 22, 2024, Stocking requested that Doc. 85 be admitted into evidence "to support her claims in this case." Doc. 135 at 1. Doc. 85 is a sworn declaration signed by Stocking, attaching 22 exhibits. *Id.* Stocking initially filed Doc. 85 on August 15, 2024 in support of motions which the Court has since resolved.[14] *See* Doc. 95. Stocking now requests that Doc. 85 be "formally entered into evidence" in support of "these proceedings," on the basis that they are probative of Newmark's misconduct. Doc.

---

[13] In Stocking's motion for reinstatement of health insurance, she argued "[t]he timing of these actions by Newmark, including terminating Plaintiff's employment and health insurance, clearly demonstrates an illegal retaliatory move *aimed at obstructing justice*." Doc. 124 at 2 (emphasis added).

[14] Doc. 85 states it was submitted in support of Stocking's motions (1) to vacate all judgments and orders issued by the Southern District of Florida, (2) to assign independent counsel or appoint a special master, (3) to amend the complaint for a second time, and 4) to prohibit contact by Stocking's former attorneys. Stocking ultimately rescinded motion (1), and the Court denied motions (2) and (4). Doc. 95. It appears motion (3) was not ultimately filed, leaving the First Amended Complaint, filed on May 11, 2023, as the operative complaint, Doc. 52.

135 at 2.  Stocking argues that the declaration "detail[s] allegations of collusion,

conspiracy, obstruction of justice, and quid pro quo bribery by Defendant," and the 22

exhibits include "communications, court records, and other records that demonstrate

Defendant's misconduct."  *Id.* at 4.

Newmark "takes no position" as to Stocking's request to submit Doc. 85 as

evidence at this stage in the litigation.  Doc. 146.  However, Newmark argues that

"[m]uch of Plaintiff's Declaration is inaccurate, irrelevant to her discrimination claims,

and includes inadmissible hearsay statements," and Newmark reserves the right to object

to the admission of Doc. 85 at trial.  *Id.*[15]

Stocking does not state explicitly which of her requests are supported by the

exhibits in Doc. 85.  However, given Newmark claims that Doc. 85 supports her

allegations of misconduct, the Court will construe this as a request for Doc. 85 to serve as

evidence in support of Stocking's motions for sanctions, Docs. 93, 124,[16] and GRANTS

the request for this purpose.  To the extent Stocking seeks to admit her prior declaration

or any of its accompanying exhibits in support of future requests, she is directed to file

such exhibits contained in Doc. 85 as may be relevant to future motions as exhibits to

each such motion.

## VII.  STOCKING'S REQUEST TO AMEND OR CORRECT FUTURE FILINGS

On November 22, 2024, Stocking requested the Court grant her leave "to amend

or correct any documents, motions, or evidence submitted in this matter to address

potential deficiencies or errors that may arise."  Doc. 139 at 1.  Stocking explains that

---

[15] On December 13, 2024, Stocking filed a letter requesting that Doc. 85 be "construed liberally" in her favor so that it is not excluded from evidence due to formal deficiencies Newmark identifies; she requests the Court "consider the intended substance of [her] declaration over its form."  Doc. 150.  The Court recognizes its obligation to read a pro se litigant's pleadings leniently.  *See Jules*, 2023 WL 5935626, at *2.

[16] The Court notes, in addition, that it considered Doc. 85 in ruling on her October 29, 2024 request for leave to serve an interrogatory, Doc. 117.

there is a possibility of "inadvertent errors in formatting, submission, or compliance with specific procedural rules." *Id.* at 2.

Newmark "takes no position" as to Stocking's request to amend or correct future filings, "but requests the opportunity to respond to any future filings by [Stocking]." Doc. 146.

The Court notes that Stocking's request for leave to amend or correct any future filing is premature and unnecessary. Stocking may, however, consistent with the Federal Rules of Civil Procedure and the solicitude afforded *pro se* litigants, request leave to amend or correct specific future filings to the extent a need arises, and the Court will evaluate each request individually.

## VIII. CONCLUSION

In sum, the Court DENIES Stocking's requests for (i) leave to serve the interrogatory proposed in Doc. 117, (ii) a protective order to protect Jane Doe, Docs. 118, 133 (iii) an order for Newmark to strike and re-file a redacted version of Doc. 121, Doc. 133 and (v) leave to amend or correct any future filing, Doc. 139.

The Court DENIES as moot Stocking's request for reinstatement of her employer-provided health insurance, Doc. 124, but it will consider her arguments regarding sanctions and alleged retaliation contained therein in ruling on Stocking's motion for sanctions, Doc. 93.

The Court DENIES without prejudice Stocking's requests for leave to issue a subpoena for deposition upon written questions for Jane Doe, Docs. 118, 133.

The Court GRANTS Stocking's request to admit Doc. 85 into evidence in support of her motions for sanctions, Docs. 93, 124. **The deadline for Stocking to submit evidence in support of her motions for sanctions is January 15, 2025.** Newmark's deadline to respond to the motions for sanctions is January 20, 2025. Stocking's deadline to reply to Newmark's response is January 27, 2025.

The Court respectfully directs the Clerk of Court to terminate the following documents which have been addressed by the Court:  Docs. 69, 117, 118, 124, 133, 135, 139, 149, and 154.  The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to the *pro se* party.

It is SO ORDERED.

Dated:    January 6, 2025
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.