**MEMO ENDORSED**

Newmark is directed to respond by March 25, 2025.

SO ORDERED.

_____
Edgardo Ramos, U.S.D.J.
Dated: March 18, 2025
New York, New York

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X

MARIA STOCKING, Plaintiff, -v.

NEWMARK KNIGHT FRANK VALUATION & ADVISORY, LLC,

Defendant.

---------------------------------------------------------- X

22 CV 07347 (ER)

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES

Plaintiff Maria Stocking, appearing pro se, hereby submits this memorandum in support of her Motion to Compel Defendant Newmark Knight Frank Valuation & Advisory, LLC ("Newmark") to comply with its discovery obligations.

Defendant's discovery inadequacies are significant and are denying Plaintiff necessary information and documents critical to establishing her claims of systematic discrimination against Hispanic employees, particularly older Hispanic women. Despite Plaintiff's good-faith attempts to secure voluntary compliance, Defendant has obstinately withheld crucial documentation that would establish patterns of disparate treatment on the basis of age, gender, and national origin. Specifically, Defendant has failed to produce: (1) emails between supervisors regarding Hispanic employees; (2) job assignment records; (3) client reassignment documentation; (4) office space

allocation records; (5) personnel exit documentation; and (6) communications regarding a white male supervisor's physical and verbal assault on a Hispanic male employee in public at a work event

## BACKGROUND

Plaintiff served her discovery requests on September 28, 2024. On October 31, 2024, Defendant responded with numerous boilerplate objections lacking the specificity required by Federal Rule of Civil Procedure 26(b)(5), producing only minimal documentation while withholding critical evidence.

On November 10, 2024, Plaintiff sent a deficiency letter identifying the inadequacies in Defendant's responses. Despite multiple attempts to schedule a meet and confer, Defendant delayed the process. When the parties finally conferred on December 2, 2024, Defendant refused to reconsider its positions and continued to withhold responsive documents.

On December 12, 2024, Plaintiff filed a request for a pre-filing conference to enable her to file a motion to compel. During the December 20 Status Conference, this Court directed the parties to meet and confer again and allowed Plaintiff to file a motion to compel should such a conference not resolve the outstanding discovery issues.

On January 5, 2025, Plaintiff and Defendant held another meet and confer. Defendant agreed to supplement its responses to certain requests by January 15, but the conference concluded without resolving the majority of disputed items. To date, Defendant has not produced the supplemental responses it agreed to provide.

**ARGUMENT**

Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery "that is relevant to any party's claim or defense" and that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Under Rule 37(a)(1), "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."

As a pro se litigant, Plaintiff is entitled to a more liberal construction of her discovery requests. The Second Circuit has consistently held that a pro se litigant's submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006). This principle applies with equal force to discovery disputes, where courts within this District have explicitly recognized that "because [plaintiff] is proceeding pro se, the Court is obliged to construe her discovery requests liberally to raise the strongest arguments that they suggest." *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

**I. EMAIL COMMUNICATIONS BETWEEN SUPERVISOR GREG BECKER AND HISPANIC FEMALE EMPLOYEES MARIA STOCKING AND ANTONIA DONOSO**

Document Request Nos. 1-7 seek email communications exchanged between Greg Becker and two Hispanic female employees, Maria Stocking and Antonia Donoso, during the three-month period preceding adverse employment actions against both individuals. In response, Defendant objected to these requests as overly broad, unduly burdensome, and not proportional to the needs of the case.

The Second Circuit has explicitly recognized that evidence establishing differential treatment of similarly situated employees outside the plaintiff's protected class constitutes probative evidence of discriminatory intent. *Mandell v. County of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003). This is especially critical in employment discrimination cases where the "absence of direct evidence of discriminatory intent" necessitates robust discovery. *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983).

The requested communications would establish that Greg Becker systematically refused to sign work product generated by Hispanic female employees, claiming unsubstantiated quality concerns, while readily approving comparable work from younger white male employees. This differential treatment directly precipitated adverse employment consequences—specifically, the termination of Donoso and Plaintiff's medical leave culminating in permanent disability.

Defendant's boilerplate objections lack the specificity required by Federal Rule of Civil Procedure 26(b)(5) and fail to provide any legitimate basis for withholding these communications. Courts within this District have consistently compelled production of precisely this category of evidence in employment discrimination cases. See *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251-52 (2d Cir. 2014); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 312 (S.D.N.Y. 2003).

## II. EMAIL COMMUNICATIONS BETWEEN SUPERVISOR GREG BECKER AND YOUNGER WHITE MALE EMPLOYEES ANTHONY BONET AND STEVEN SAIGANOR

Document Request Nos. 9-12 seek email communications between Greg Becker and two younger white male employees, Anthony Bonet and Steve Saganoir, during the specified three-month

period. Defendant objected to these requests as irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case.

The Second Circuit has unambiguously held that "a showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination." *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010). These communications are essential comparator evidence that would establish that similarly situated employees outside Plaintiff's protected classes received systematically preferential treatment.

The requested communications would establish that Becker evaluated and responded to work product from younger white male employees with twenty years less experience according to markedly different standards than those applied to Hispanic female employees, despite comparable job responsibilities and performance metrics. Courts have consistently compelled production of comparator evidence in discrimination cases, recognizing its centrality to establishing discriminatory intent. See *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990); *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 565 (S.D.N.Y. 2013).

## III. JOB LOGS DOCUMENTING CLIENT ASSIGNMENTS OF RAYMOND HIGGINS, DAVID GRAY AND GREG BECKER

Document Request Nos. 15-20 seek job logs for Raymond Higgins, Greg Becker, David Gray, and Maria Stocking, which document client assignments and exclusivity arrangements. Defendant objected that these requests seek documents already in Plaintiff's possession and are overly broad, unduly burdensome, and not proportional to the needs of the case.

The Second Circuit has explicitly recognized that discriminatory allocation of resources and opportunities constitutes an adverse employment action actionable under federal anti-discrimination statutes. *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). These records would definitively establish a pattern whereby Defendant systematically redistributed valuable client relationships from Hispanic female employees to younger white male employees on the basis of protected characteristics rather than legitimate business considerations.

Plaintiff's job logs alone are insufficient, as they do not demonstrate the preferential reassignment of clients to other employees. Courts within this District have consistently compelled production of records documenting resource allocation in discrimination cases. See *EEOC v. Morgan Stanley & Co.*, 227 F. Supp. 2d 322, 327 (S.D.N.Y. 2002); *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1015 (2d Cir. 1980).

## IV. DAVID GRAY'S BANK UNITED HOTEL APPRAISAL REPORT AND MARIA STOCKING'S IDENTICAL BANK UNITED HOTEL APPRAISAL REPORT AND RELEVANT COMMUNICATIONS

Document Request Nos. 25-28 seek: (1) the Bank United hotel appraisal report that Greg Becker compelled Plaintiff to sign without reviewing; and (2) email communications between Greg Becker, David Gray, and Bank United representatives regarding the signing of this report and subsequent reassignment of the Bank United account exclusively to David Gray. Defendant objected to these requests as overly broad, unduly burdensome, and not proportional to the needs of the case.

The Second Circuit has explicitly recognized that evidence establishing that an employer's proffered explanation for an adverse employment action is "unworthy of credence" constitutes

powerful circumstantial evidence of discriminatory intent. *Reeves v. Sanderson Plumbing Prod*s., Inc., 530 U.S. 133, 147 (2000). These materials constitute definitive evidence of pretextual actions designed to facilitate discriminatory reassignment of client relationships.

The requested materials would establish that Defendant's purported justifications for reassigning the Bank United relationship were pretextual, with the hotel appraisal report signature requirement serving as a pretext for the predetermined decision to transfer this valuable client relationship to a younger white male employee. Courts consistently compel production of documentation establishing pretextual justifications for adverse employment actions. See *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37-38 (2d Cir. 1994); Zubulake, 217 F.R.D. at 311-12.

## V. OFFICE SPACE ALLOCATION RECORDS

Document Request Nos. 30-33 seek floor plans and office space assignment records for Defendant's Miami, Palm Beach, and Boca Raton offices. Defendant objected that these requests are overly broad, unduly burdensome, and not proportional to the needs of the case.

The Second Circuit has explicitly recognized that discriminatory allocation of physical workspace can constitute an adverse employment action when it materially impacts working conditions. *Rodriguez v. Board of Education*, 620 F.2d 362, 366 (2d Cir. 1980); *de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir. 1996). These materials would establish a systematic pattern of physical marginalization of Hispanic employees through discriminatory workspace allocation.

The requested records would establish a systematic pattern whereby: (1) younger white male employees were invariably assigned dedicated workspace; (2) Hispanic female employees had their workspace reassigned to younger white male employees; and (3) Hispanic female employees

were ultimately relegated to exclusively remote work arrangements. Courts have consistently compelled production of documentation establishing patterns of physical marginalization in discrimination cases. See *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010); Patane v. Clark, 508 F.3d 106, 116 (2d Cir. 2007).

## VI. EXIT DOCUMENTATION OF HISPANIC EMPLOYEES

Document Request Nos. 35-40 seek exit/termination documentation for Elizabeth Santana, Randy Almadaguer, Yesenia Arrencebia, Mary Ermani, Daniel Swatigui, and Nalissa Saati—all Hispanic employees who departed from Defendant's Miami office within an approximately twelve-month period. Defendant objected to these requests as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of the case.

The Supreme Court has explicitly recognized that "[s]tatistical analyses have served and will continue to serve an important role" in establishing discriminatory patterns. *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 339 (1977). The Second Circuit has applied this principle in holding that "statistics alone may be sufficient to warrant relief" in disparate treatment cases where they reveal "a pattern of discriminatory decision-making." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 604 (2d Cir. 1986).

The requested exit documentation would establish that Defendant systematically terminated Hispanic employees, particularly older Hispanic women, at a statistically significant rate exceeding that of non-Hispanic employees. Courts have consistently compelled production of documentation establishing patterns of employment actions targeting protected groups. See *EEOC* v. *Morgan Stanley*, 227 F. Supp. 2d at 328.

## VII. COMMUNICATIONS REGARDING GREG BECKER'S RACIALLY MOTIVATED PHYSICAL AND VERBAL CASSAULT ON JOSE ORTIZ, A HISPANIC APPRAISER

Document Request Nos. 42-45 seek all text messages and email communications between Steve DuPlantis, Helene Jacobson, John Busi, and Greg Becker pertaining to Becker's verbal and physical assault on a Hispanic appraiser, Jose Ortiz, during a work-related event. Defendant objected to these requests as overly broad, unduly burdensome, irrelevant, and protected by attorney-client privilege.

The Second Circuit has explicitly held that "evidence of an employer's general practice of discrimination may be considered on the issue of whether discrimination occurred in a particular case." C*hambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1048 (2d Cir. 1985). These communications constitute direct evidence of: (1) discriminatory animus by a supervisory employee with direct authority over Hispanic subordinates; and (2) institutional tolerance of discriminatory conduct.

The requested communications would establish that Defendant's senior management was contemporaneously aware of Becker's discriminatory assault yet consciously elected to conceal rather than remediate this conduct. This institutional decision to tolerate Becker's discriminatory behavior compelled Plaintiff and other Hispanic employees to continue working under the direct supervision of Greg Becker, an individual who had demonstrated explicit discriminatory animus towards their protected class. The Second Circuit has specifically recognized that evidence of an employer's failure to address known instances of discrimination constitutes "relevant and admissible" evidence of discriminatory intent. *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 382 (2d Cir. 2001).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court GRANT Plaintiff's Motion to Compel Discovery Responses and order Defendant to produce all enumerated categories of documents within fourteen (14) days. The requested materials constitute the evidentiary foundation for establishing Defendant's systematic discrimination against employees on the basis of protected characteristics—evidence to which Plaintiff is entitled under the Federal Rules of Civil Procedure. Plaintiff further requests that the Court order Defendant to pay Plaintiff's reasonable expenses incurred in making this motion, pursuant to Rule 37(a)(5)(A).

Respectfully submitted,

Maria Stocking *Pro Se Plaintiff*

888 Biscayne Boulevard, 57th Floor

Miami, Florida 33132

mstocking747@outlook.com

Dated: Miami, Florida March 14, 2025